UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 13-CV-20697-COOKE/Turnoff

DONALD SMITH,

    Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.
_____/

**DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERT THOMAS EBRO**

    Defendant, Royal Caribbean Cruises, Ltd. ("RCL"), by and through undersigned counsel and pursuant to Federal Rule of Evidence 702, the Federal Rules of Civil Procedure, and the Local Rules of the Southern District of Florida, hereby moves this Court to strike Plaintiff's Expert, Thomas Ebro, and preclude his testimony at trial, and states:

### INTRODUCTION

    Plaintiff claims that he sustained injuries when he was swimming in a pool onboard RCL's cruise ship, M/S Liberty of the Seas, and swam into a wall of the pool. Plaintiff retained an "aquatic safety consultant" named Thomas Ebro as an expert witness. However, Ebro's "methods" for formulating his opinions in this matter are virtually identical to those in a similar case in which the court struck Mr. Ebro as an expert, precluded him from testifying at trial, and held that:

> Mr. Ebro appears to apply his prior knowledge and beliefs to the facts as he sees them in order to formulate his opinions regarding a case, making sure that his opinions are not out of line with those that he considers the industry standard. That the *Daubert* reliability factors cannot legitimately be applied to Mr. Ebro's process underscores its failure to constitute a methodology. Because this "method" consists of nothing more than Mr. Ebro processing the evidence in front of him through the filter of his beliefs regarding aquatic safety to form speculative, conclusory statements, it cannot be tested or subjected to peer review and publication and it certainly cannot be said to be generally accepted. *See Rink*, 400 F.3d at 1291-92… Accordingly, the Court cannot now find either that Mr. Ebro's opinions are based upon a veritable methodology or that Mr. Ebro's "methodology" is sufficiently reliable to allow his testimony to be presented to the jury.

*See Johnson v. Carnival Corporation,* Order on Defendant's Motion in Limine, DE 151, Case No.: 07-

20147-CIV-Ungaro, (S.D. Fla. 2007)(attached hereto as *Exhibit* "A").

In the present case, Ebro's Expert Report and opinions are based on his exact same unreliable "methodology" that has previously been held unworthy of expert testimony. Additionally, Ebro's expert report and opinions should be excluded because they are based on inaccurate or incomplete facts, are speculative, and do not assist the trier of fact as they are not beyond the understanding of the average lay person.

Ebro should also be excluded as an expert in this matter because he recently conducted an unauthorized vessel inspection on February 20, 2014, in violation and circumvention of Federal Rule of Civil Procedure 34. Without obtaining, or even requesting, the Court's permission to conduct this unauthorized vessel inspection, Plaintiff's counsel secretly purchased a ticket for Ebro to board RCL's vessel under the guise of being a passenger on a cruise, without providing notice to RCL of Ebro's true purpose and without the presence of RCL's counsel during this vessel inspection. Notably, Ebro utilized these underhanded tactics in the exact same case where he was subsequently struck as an expert and was precluded from testifying at trial. *See Johnson v. Carnival Corporation,* Order on Defendant's Motion in Limine, DE 151, Case No.: 07-20147-CIV-Ungaro, (S.D. Fla. 2007)(*Exhibit* "A").

Finally, as a result of the unauthorized vessel inspection conducted without Court approval, Ebro now intends to modify and add new opinions, two months after the Court ordered deadline to do so. The deadline for expert discovery and for Plaintiff to serve his expert disclosures has passed and Ebro should not be allowed to amend or add to his Report any opinions based on an untimely vessel inspection that Plaintiff's counsel and Ebro devised in willful and contumacious disregard for the Federal Rules of Civil Procedure. For each of these reasons, RCL respectfully requests that this Honorable Court strike Ebro as an expert and preclude Plaintiff from offering his opinions at trial.

MEMORANDUM OF LAW

I.    LEGAL STANDARD ON ADMISSIBILITY OF EXPERT TESTIMONY

The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also Fla. Power & Light Co. v. Qualified Contrs., Inc.*, 2005 U.S. Dist. LEXIS 48047 (S.D. Fla. Dec. 2, 2005). Thus, the Plaintiff must demonstrate that the expert witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact. *Masferrer*, 367 F. Supp.

2d at 1372, interpreting *Allison*, 184 F.3d at 1306.

In *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004), the Eleventh Circuit clearly delineated the responsibility of the trial court when dealing with admissibility of expert testimony:

> [I]n determining the admissibility of expert testimony under Rule 702, we engage in a rigorous three-part inquiry. Trial courts must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260; (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The four nonexclusive factors the Supreme Court mandated in *Daubert* are: 1) whether the theory is scientific knowledge which can and has been tested; 2) whether the theory has been subjected to peer review and publication; 3) the known or potential rate of error and the existence of standards controlling the technique's operation; and, 4) the extent to which the methodology or technique employed by the expert is generally accepted in the scientific community. *See*, *Daubert*, 509 US at 593-594.

*Daubert* requires the trial court to act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury. *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1371 (S.D. Fla. 2005) (King, J.) Courts have routinely rejected expert testimony where the proffered opinion has not been tested, has not been subjected to scrutiny of peer review, has not gained general acceptance, and is otherwise not founded upon "scientific methodology" and "reliable foundation." *Chikovsky v. Ortho Pharmaceuticals Corporation*, 832 F. Supp. 341, 345 (S.D. Fla. 1993); *Byrnes v. Honda*, 887 F. Supp. 279 (S.D. Fla. 1994).

II. **EBRO'S OPINIONS AND TESTIMONY FAIL TO MEET THE LEGAL STANDARD FOR ADMISSIBILITY UNDER *DAUBERT* AND THE FEDERAL RULES OF CIVIL PROCEDURE**

On January 8, 2014, Plaintiff served RCL with Ebro's only written report in this matter.[1] Ebro's report contained three opinions regarding his theory that Plaintiff's alleged incident occurred

---

[1] Notably, during Ebro's deposition, Ebro admitted that he did not even draft this report and that, instead, Plaintiff's counsel drafted the expert report, which Ebro merely reviewed, signed, and put on his company's letter head. *See Ebro dep.* 34:17-35:10 (attached hereto as *Exhibit* "B"):

> Q:   Defendant's Exhibit E is an e-mail to you from a Ms. Rosa, counsel for the Plaintiff's office, which states, "See attached report for your review and signature," and then it

3

because: 1) water clarity was lacking; 2) the signage in the pool area should have specifically prohibited horseplay and breath-hold swimming; and 3) RCL was required to have a lifeguard at the pool and that lifeguard would have prevented the accident. *See Ebro Expert Report* (attached hereto as *Exhibit* "C"); *See also Ebro dep.* 53. During his deposition on February 25, 2014, Ebro also disclosed an additional opinion, for the first time, based on his unauthorized vessel inspection: 4) that the design of the pool was deficient. *See Ebro dep.* 54.

1) **EBRO'S OPINION THAT WATER CLARITY WAS LACKING IS NOT BASED ON ANY SCIENTIFIC, TECHNICAL, OR SPECIALIZED ANALYSIS AND, INSTEAD, IS NOTHING MORE THAN REGURGITATION OF THE PLAINTIFF'S DEPOSITION TESTIMONY**

Expert testimony is not admissible if the expert is not qualified to testify competently about the matters he intends to address. *See Frazier*, 387 F.3d at 1260; *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)(citing *Daubert*, 509 U.S. at 589). As a gatekeeper, a district court must distinguish expert opinions "based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009)(quoting *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001)). Further, Fed. R. Evid. 702(b) provides that for expert opinions to be admissible, they must be "based on sufficient facts or data." An expert opinion that it is not based upon any independent investigation or testing and merely relies upon a limited review of deposition testimony and contracts does not meet Rule 702's criteria of showing that the proposed testimony is based upon sufficient facts or data. *Fla. Power & Light Co. v. Qualified Contrs., Inc.*, 2005 U.S. Dist. LEXIS 48047 (S.D. Fla. 2005)

In his expert report, Ebro states that "[b]ased upon testimony, and the photos of the scene, water clarity was lacking." *See Ebro Expert Report,* ¶ 7(c). However, when questioned about the truth

---

| | |
|---|---|
| | appears to be a draft of the report that is not on your letterhead, that was then later put on your letterhead and sent back as the report? |
| A: | You're correct, it is -- |
| Q: | So, I go back to my original question. Did you draft the report or did counsel for the Plaintiff? |
| A: | By looking at this, it reminds me that counsel for Plaintiff, in expediting this, assisted in seeing this report come forth in a timely fashion and provided me this -- these pages. |
| Q: | So is it accurate that counsel for the Plaintiff's office provided you with the draft report, which you then reviewed, put on your letterhead, signed, and sent back as your report in this case? |
| A: | Yes. |

4

of that statement, Ebro admitted that the foundation of his opinion was not actually based on any photograph and, in fact, the only basis for that opinion is solely the Plaintiff's deposition testimony:

> Q: Can you hold up the specific photo that you're referring to that led you to draw the conclusion that water clarity was lacking on the date of Mr. Smith's accident?
>
> A: I didn't base that opinion based on the photo. I based that on the -- exclusively on the Plaintiff's representation of the water as being cloudy…
>
> Q: I want to make sure I understand that the sole basis for that opinion is because that's what the Plaintiff told you?
>
> A: Yes.
>
> Q: Okay. You did nothing to independently test or verify or document the water clarity on that date?
>
> A: Counsel, first, the answer is yes, that's correct…

*Ebro dep.* 60:18-61:21.

In fact, Ebro even admits that he has never had a single conversation with the Plaintiff about this incident. *Ebro dep.* 6:13-15. When asked what methodology he used to formulate his opinion that the water clarity was lacking on the date of the alleged incident, Ebro testified that:

> A: **I did not use a methodology other than to use my eyes in reading the Plaintiff's deposition** wherein he claimed the pool was dirty. I had no other opinions that were provided either way. I did not rely on the visuals, either the -- you know, I did not have, at that point, anything except the pictures, and I didn't rely on them because they did not accurately depict or provide me a reasonable basis for opining about water clarity.

*Ebro dep.* 63:15-23 (emphasis added).

After deposing Ebro at length regarding his opinion that water clarity was lacking, Ebro finally conceded that he does not actually know the clarity of the water on the date of the incident.

> A: **I don't know if the water was clear – unclear.**

*Ebro dep.* 131:10-11 (emphasis added). It is clear that Ebro's opinion regarding water clarity cannot be admissible as he openly admits that he does not actually know the truth of his statement. Further, he admits that he did not use any scientific, technical, or specialized methodology in formulating that opinion and, instead, the only fact or data that he relied on was merely the Plaintiff's testimony, which he simply accepted as true without any independent verification and regurgitated as an expert opinion. The *Daubert* factors cannot legitimately be applied to Mr. Ebro's

5

opinion as he failed to utilize any methodology whatsoever and his "expert" testimony would simply consist of restating the Plaintiff's testimony, which would not assist the trier of fact in any way.

> 2) **EBRO'S OPINION THAT THE SIGNAGE IN THE POOL AREA SHOULD HAVE SPECIFICALLY PROHIBITED HORSEPLAY AND BREATH-HOLD SWIMMING AND THAT SUCH SIGNAGE WOULD HAVE PREVENTED THE ACCIDENT IS MERE SPECULATION AND IS UNSUPPORTED BY THE LAW AND THE FACTS OF THE CASE**

"Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). Moreover, "to be permissible the expert must be in possession of the necessary facts which will allow the expert to form an accurate conclusion." *D & D Assocs., Inc. v. Bd. Of Educ. Of N. Plainfield*, 411 F.Supp.2d 483, 488 (D.N.J. 2006); *see also Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) ("It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."). Fed. R. Evid. 702 requires that expert testimony be "the product of reliable principles and methods" and that the expert reliably apply the principles and methods to the actual facts of the case. Fed. R. Evid. 702(c-d).

In his expert report, Ebro states that Plaintiff's "accident resulted because the pool wherein he was swimming did not have… proper warning signs which would have prevented this accident." *Ebro Report,* ¶ 7(b). While Ebro's Report does not state specifically what pools rules he contends were lacking, at his deposition he stated that "[t]he signage should have included the prohibition against horseplay[2] and breath-hold swimming." *Ebro dep.* 69:21-22. However, again, the foundation for Ebro's "expert" opinion is completely lacking as it is based on his own assumptions and not the actual facts of the case:

> Q: Do you know what signs were in place on the date of the incident?
>
> A: No... I'm relying on the signs that I've been presented [in surveillance footage].

*Ebro dep.* 74:21-22.

Regarding the methodology that Ebro used to determine what language was contained on the signs in the surveillance footage, he testified:

> A: I took a magnifying glass to that sign. I did not detect the language I'm critical was absent…

---

[2] Notably, when asked if Plaintiff was engaged in horseplay, Ebro replied "[n]o." *Ebro dep.* 70:10-11

> Q: And through your magnifying glass, are you able to read all of the language on that sign?
>
> A: No, I just looked at the shapes and compared them with what I had, and I satisfied myself that there was no reference to any language that would say no breath holding and that horseplay is prohibited.

*Ebro dep.* 76:3-15.

While Ebro may be satisfied with his magnifying glass methodology, his shape comparison certainly has not gained general acceptance in the scientific community and is not otherwise founded upon "scientific methodology" and "reliable foundation" as required of proposed expert testimony. In fact, even Ebro admits that he was unable to determine the full language on the signs using his "methodology."

Not only is Ebro unaware of what language was actually on the subject sign, but even if the language that he contends should have been on the sign was absent (i.e. a prohibition against horseplay and breath-hold swimming) such language is not required by any statute, law, rule, or regulation and the duty to include such language is merely based on Ebro's own opinion that RCL should be subject to this heightened duty:

> Q: Okay. So, it is simply your opinion. It is not based upon any methodology, it is not based upon any statute, it is not based upon any federal regulation. There is no law you can point to, no regulation, no CFR, no coast guard rule. Is there anything you can point to that tells me that on this cruise ship there was a required bullet point under a sign that says swimmers, do not swim under water?
>
> A: That would have been easy if you would have asked that. The answer is no, of course not. There was no -- as I testified, no mandate to have that language on a sign.

*Ebro dep.* 78:10-21.

Ebro's opinion regarding specific language that should have been on the sign and would have prevented the accident is simply that, just Ebro's opinion, and as the court in *Johnson* recognized, this is "nothing more than Mr. Ebro processing the evidence in front of him through the filter of his beliefs regarding aquatic safety to form speculative, conclusory statements, it cannot be tested or subjected to peer review and publication and it certainly cannot be said to be generally accepted." *See Johnson v. Carnival Corporation,* Order on Defendant's Motion in Limine, DE 151, Case No.: 07-20147-CIV-Ungaro, (S.D. Fla. 2007).

Furthermore, any opinion regarding language on the signs is irrelevant as Plaintiff testified that he did not even read the signs.[3] When Ebro was questioned about this, he agreed that the absence of the language that he contends should be on the sign has no impact on this case:

> Q: Okay. Now, would you agree with me that if Mr. Smith said he didn't read the signs, it wouldn't really matter what that signs said because he didn't read it?
>
> A: Well, I disagree that it wouldn't matter what it says. It does matter for the reasons I just gave, but if Mr. Smith didn't read it, then he would not have had that instruction had it said what I felt needs to be on the sign. He would not have had that information simply because, as you said, he would not have read it. That doesn't preclude that the sign shouldn't have had the necessary information contained.
>
> Q: **Well, it just means it wouldn't have had any impact on this case because he would not have read it.**
>
> A: **That's correct. That's good. That's good. I agree with that.**

*Ebro dep.* 84:21-85-11 (emphasis added).

Ebro's opinion regarding the language on signs cannot be admissible as he not only openly admits that he does not actually know what language was on the signs, but he also cannot point to a single authority that supports his opinion. In fact, no statute, rule, regulation, or law requires RCL to have Ebro's proposed language on its signs and Ebro simply seeks to hold RCL to an improper heightened standard of care. Plaintiff himself admits that he did not even read the sign and, therefore, Ebro's opinion has no impact on this case and would not assist the trier of fact.

### 3) EBRO'S OPINION THAT RCL WAS REQUIRED TO HAVE A LIFEGUARD AND THAT A LIFEGUARD WOULD HAVE PREVENTED THE ACCIDENT IS NOT ONLY A MISSTATEMENT OF THE LAW BUT IS ALSO ENTIRELY SPECULATIVE

Ebro's Report states that "[c]ruise ships must have lifeguards on duty" and that a lifeguard would have prevented this accident. *Ebro Report*, ¶ 7(b) & (d). However, RCL did not have a legal duty to provide a lifeguard at its pool and its only duty was to exercise reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959). A vessel owner is not an insurer of its passengers' safety and it does not necessarily

---

[3] At his deposition, Plaintiff testified as follows:
> Q: Do you recall whether there was a sign around the pool with pool rules?
> A: I don't recall.
> Q: Do you remember reading anything about the pool rules?
> A: No.

*Smith dep.1*49:14-19 (attached hereto as *Exhibit* "D").

8

follow that an accident will never happen if a cruise ship operator exercises reasonable care under the circumstances. *Joseph v. Carnival Corp.*, Case No. 11-20221-CIV-HUCK, 2011 U.S. Dist. LEXIS 80238 at *8 (S.D. Fla. July 22, 2011)(citing *Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 41 n.1 (S.D. Fla. 1986) ("The vessel is not, however, the insurer of the safety of the passengers. Merely because an accident occurs, a carrier does not become liable to a passenger.").

In the Eleventh Circuit, an expert may not testify as to legal conclusions. *See, e.g., United States v. Delattore,* 308 Fed.Appx. 380 (11th Cir. 2009): *see also St. Cyr v. Flying J Inc.*, 2008 U.S. Dist. LEXIS 107653 (M.D. Fla. 2008) (excluding testimony of defense expert regarding plaintiffs' duty); *Brown v. Bray & Gillespie III Mgmt. LLC*, 2008 U.S. Dist. LEXIS 45673 *14-15 (M.D. Fla. 2008) (striking expert's statement as constituting a "legal conclusion as to what standard of care hotel operators owe their guests"); *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.").

Ebro's statement in his Report that cruise ships must have lifeguards and that a lifeguard would have prevented the subject incident is an impermissible legal conclusion regarding a duty that does not exist under the law. Ebro's opinion would instruct the fact finder to hold RCL to a duty that does not exist under the law and then conclude that RCL breached that improper duty. In fact, Ebro even admits that there is no rule, regulation, statute, code, or anything else that required a lifeguard to be at the subject pool:

> Q: The question is, is there any rule, regulation, statute, code or et cetera that required a lifeguard to be at this specific pool?
>
> A: And I answered. At this specific pool, no…

*Ebro dep.* 87:2-5.

Further illustrating the complete lack of foundation and reliability that characterize all of Ebro's opinions in this matter, Ebro's claims that the applicable "industry standard" is based on his own credentials, training time, and experience or, in other words, Ebro's expert opinion is based on the fact that he considers himself an expert and has an opinion:

> Q: Now, you've stated that the industry standard would have been to have lifeguards around this pool, correct?
>
> A: Yes.

> Q: Can you point me to any law, regulation, statute, et cetera, applicable to this specific pool that required lifeguards to be in place?
>
> A: The operative term in your question is this particular pool. You know what I've read
>
> Q: The pool at issue in this case. There is only one pool at issue here.
>
> A: No, sir, we're talking about a public pool. We're talking about a public pool, we're talking about standards you're asking, and I'm not limiting it to this pool. As it was, you didn't even want me to be on this pool, so I wouldn't have even seen it. I just happened to glance in quick -- glance at it so I can, you know, be more relevant in my answers, but this pool, no, I didn't read any prohibitions against this pool, but this pool -- **I'm a safety expert. I'm a safety aquatic expert. My credentials if you asked -- whether this pool was on a ship or whether it was on an airplane or on a space station, if I was asked to say go up there, there's a pool up there, tell me if it's safe, my credentials allow me to do that. So, it is irrelevant to me in terms of where the pool is. I'm applying and giving you an opinion based on my training, time, and experience and the expertise I just referenced.**

*Ebro dep.* 85:15-86:17.

The fact that Ebro came to the conclusion that cruise ships must have lifeguards on duty, based his "expertise," despite his admission that there is not a single rule, regulation, statute, code, or anything else that actually required a lifeguard to be at the subject pool, underscores the importance of his disqualification as an "expert" in this field.

Additionally, expert testimony cannot be based on speculation. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1316-1317 (11th Cir. 1999) ("Under the regime of *Daubert* … a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation...")(quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir.1996)). Ebro opines that a lifeguard would have prevented the accident because he or she would have observed Plaintiff swimming underwater holding his breath and would have stopped him before he had his chance to do his third swim. *Ebro dep.* 94:1-7. Not only is this testimony pure speculation, but whether the incident was preventable is not even the relevant inquiry. By opining that the subject incident was preventable, Ebro offers a second incorrect legal standard. Further, his opinion is not based on any reliable, proven methodology. When asked about the methodology he used to determine that if a lifeguard had been present, this accident would have been prevented, Ebro replied:

> A: Well, I started with common sense, and then I used my education, training, and experience, and then I went to the pool and considered as to what a lifeguard -- what his means was…

*Ebro dep.* 93:10-16.

However, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *S. Grouts & Mortars, Inc. v. 3M Co.*, 2008 U.S. Dist. LEXIS 70222 (S.D. Fla. Sept. 16, 2008)(quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005).

Notably, Ebro's opinions regarding the use of lifeguards are the exact same opinions that Ebro advanced in *Johnson v. Carnival Corporation*. See Order on Defendant's Motion in Limine, DE 151, Case No.: 07-20147-CIV-Ungaro, (S.D. Fla. 2007). In that case Ebro also opined that "industry standards . . . recommended that commercial pool operations required the use of trained lifeguards" and "the use of 'proactive supervision' through lifeguards would have prevented this accident." *Id.* at 8. However, the *Johnson* court struck Ebro's opinions because his "'method' consists of nothing more than Mr. Ebro processing the evidence in front of him through the filter of his beliefs regarding aquatic safety to form speculative, conclusory statements, it cannot be tested or subjected to peer review and publication and it certainly cannot be said to be generally accepted." *Id.* at 9.

After Ebro was deposed at length regarding this opinion, he again eventually conceded that based on the Plaintiff's own deposition testimony, even if a lifeguard was on duty, they may not have been able to recognize that Plaintiff was attempting to swim underwater while holding his breath or have been able to prevent this incident:

> Q: Okay. Then looking at page 36 [of Plaintiff's deposition transcript], which you're relying upon, where it discusses on line 12 that he was swimming for 15 to 20 minutes and attempted the couple of laps during that 15 to 20-minute period, **don't you believe that's a sufficient amount of time by which a lifeguard may not have recognized this man was attempting to swim from end to end of the pool under water?**
>
> A: **Yes**.

*Ebro dep.* 115:16-24 (emphasis added).

The truth is that nobody knows what might have happened under a different set of facts than what actually occurred and Ebro's opinions based on his own assumption of facts not in the record are not only speculative but also admittedly incorrect. These unreliable and baseless opinions should be stuck as well and Plaintiff should not be allowed to present these opinions at trial.

### 4) EBRO'S OPINION REGARDING DESIGN DEFICIENCIES CITES NUMEROUS LAND BASED STATUTES THAT DO NOT APPLY TO CRUISE SHIP POOLS

During his deposition Ebro also disclosed, for the first time, an additional opinion based on his unauthorized vessel inspection, in which he claims that RCL is liable because the subject pool design did not comply with certain statutes and regulation:

Q: Now, you agree with me that that opinion is being disclosed for the first time today, correct?

A: Yes.

Q: And I believe you said that your opinions are based upon -- I don't -- hold on. It's your reading of Florida Statute 64E-9, and you believe Royal Caribbean did not follow the construction guidelines contained within that statute, correct?

A: Yes.

Q: Okay.

A: I said more than that, but to your question right now, yes.

Q: Well, no, no, no. I want to get it all, so what else is there?

A: I indicated to you that this industry standard that we're now going to be talking about was advanced by the Council for National Cooperation in Aquatics way back in 1987, that it emphasized the need to demarcate the top of a pool wall, the leading edge of submerged steps, and protruding underwater ledges or swim-outs so as to maximize their visibility.  Now, in addition, ANSI -- you asked me about that -- ANSI/NSPI, which currently has been renamed to APSP, for decades has prescribed industry standards along the same lines, prohibiting underwater protrusions and obstructions in the swimming pool basin that may cause injury to bathers. You indicated earlier that you have already consulted the ICC's, the International Code Council's Swimming Pool and Spa Code, that it likewise prescribes that the leading edges of submerged seats, benches, and swim-outs including submerged tanning ledges or sun shelves, you know, plus leading edges of submerged pool steps shall be distinguished by a color contrasting with the adjacent color of vertical surfaces. And the State of Florida we did discuss, but know that's included, but that probably has the strongest, you know, mandate type power, that it has codified such industry standards in this Chapter 64E-9. It's a Department of Health regulation, and it pertains to the public swimming pools and bathing places. Those are the standards that I referenced and that I brought along in addition with other industry publications representing other organizations that are like minded.

*Ebro dep.* 116:1-117:21.

Most notably, the very first agency that Ebro indentifies that advanced the "industry standard" that he claims applies in this case is the Council for National Cooperation in Aquatics, an organization that formally ceased all operation in the late 1990s and is no longer in existence, much less generally accepted in the scientific community. When questioned regarding the applicability of land based statutes such as ANSI/NSPI or APSP to cruise ship pools specifically, Ebro could only proffer his own opinion that he believes the cited material *should* apply:

> Q: All right. So, let's go through these one by one. We can start with ANSI. I have it in front of me. First question, does this apply to a cruise ship? What law actually says this is applicable as a standard that a cruise ship needs to follow when building a swimming pool?
>
> A: **I'm not aware of any of the language the way you just phrased it.**
>
> Q: Well, is there anything out there that says that a cruise ship needs to follow this when building a pool?
>
> A: Well, not in the way you phrased it. A cruise ship, in my opinion, when it builds a pool, it needs to comply with industry standards…

*Ebro dep.* 45:23-46:11 (emphasis added).

Regarding Florida Chapter 64E-9 and other Florida regulations:

> Q: Okay. Does chapter 64E-9 of the Florida code or these Florida regulations, do they apply to cruise ships?
>
> A: In my opinion, yes.
>
> Q: Are they legally binding on a cruise ship? Not because you want it to be, I understand that. Does the law actually apply to a cruise ship?
>
> A: **Counsel, I don't know because I'm not a lawyer.** I can only give you an opinion based on what I know, and because the cruise ship is in Florida, because this is an activity -- boarding and use -- and facility use in Florida, because it is a state in which this activity and this injury was taking place, it's my non-lawyerly understanding that what Florida deems necessary for public pool operators and designers to comply with is that 64 provision.
>
> Q: But you're not a lawyer and you're not trying to interpret the statute in terms of whether or not it's legally binding, correct?
>
> A: No, sir. What normally happens is that lawyers ask me for my interpretation. It may or may not be correct, but lawyers are not aquatic specialists any more than I'm a lawyer and so I do the best I can, and you may find that I may be wrong,

*Ebro dep.* 117:22-118:20 (emphasis added).

The problem with Ebro's opinions is that he is not a legal expert and has no credibility when it comes to the legal application of a land based statute or a regulation to cruise ship pools specifically. "Experience, standing alone, is [not] a sufficient foundation rendering reliable any conceivable opinion the expert may express." *United States v. Masferrer*, 367 F. Supp. 2d 1365 (S.D. Fla. 2005). As Ebro admits, he is not a lawyer and simply doesn't know whether Florida regulations are binding on a cruise ship. Because of his role as Plaintiff's "aquatic safety specialist," Ebro would like these statutes to apply in this case but he simply lacks the legal expertise to give a reliable opinion regarding their applicability.

The foundation of Ebro's opinion seems to be that, because the cruise ship happens to Port in Florida, the Florida codes and regulations apply. However, extrapolating on Ebro's theory, a cruise ship would then have the responsibility to comply with every code and regulation in every state and country in which it ports. Not only would this place a heightened duty on the cruise lines, but could also result in the impossibility of compliance with that heightened duty if two states had conflicting regulations. Not only is Ebro's theory confusing and unsupported by the law, but it would place a heightened duty of care on the cruise line and mislead the trier of fact. *Coquina Invs. v. Rothstein*, 2011 U.S. Dist. LEXIS 120267 (S.D. Fla. Oct. 18, 2011)("The trial court's gatekeeping function requires more than simply taking the expert's word for it.")

### III. EBRO SHOULD BE STRUCK AS AN EXPERT AND HIS TESTIMONY PRECLUDED FROM TRIAL AS A SANCTION FOR HIS AND PLAINTIFF'S COUNSEL'S WILLFUL AND CONTUMACIOUS VIOLATION OF THE FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 34(a)(2) provides that "[a] party may serve on any other party a request… to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." The Rule requires the requesting party to describe with reasonable particularity the scope of the inspection and must specify reasonable time, place, and manner for the inspection. This provides the responding party with notice of the inspection and allows an opportunity to object to the request.

In *Baugus v. CSX Transp., Inc.*, 223 F.R.D. 469, 471 (D. Ohio 2004) the court excluded videotape taken surreptitiously of a railroad yard by the plaintiff in violation of Federal Rules of Civil Procedure 34. The court stated that the Rule was designed "to prevent exactly this sort of undertaking," noting the many safeguards that were not followed, including, an opportunity for the

14

other side to be present and have the assistance of counsel. The *Baugus* court explained the important purpose of the Rule's safeguards as follows:

> Such assistance helps ensure that what is seen or done is pertinent, and that any record that is created is accurate. Such assistance also lessens the likelihood of later dispute or challenge to the admissibility of evidence about what was done or seen. It avoids, in a word, the kind of eve-of-trial motion *in limine* that defendant has had to bring in this case.

Rule 34, by enabling a court, rather than a single party, to decide whether to permit entry, and if permitted, to prescribe its conditions, also allows a "balancing of the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *Teer v. Law Engineering and Environmental Services, Inc.*, 176 F.R.D. 206 (E.D.N.C. 1997) (citing *Belcher v. Bassett Furniture Industries, Inc.,* 588 F.2d 904 (4th Cir.1978)). When a party acts unilaterally, this balancing cannot occur.

In the present case, Plaintiff's counsel and Ebro intentionally violated the long-standing Rules of Civil Procedure by purchasing Ebro a cruise ticket so that he could conduct an unauthorized vessel inspection under the guise of being a cruise passenger without ever notifying RCL of his true purpose.

> Q: Okay. Let's talk about the inspection you made of Liberty of the Seas on Thursday, February 20th. We were provided at 9:30 this morning with approximately 100 photographs and some videos of a -- what you call a vessel inspection that you did last Thursday, February 20th, is that correct?
>
> A: That's correct.
> Q: Was that -- are those photographs and videos items that you took under the guise of being a passenger on board Liberty of the Seas?
>
> MR. ROBERTSON: Object to the form of the question.
>
> Q: You can answer.
>
> A: No, I wasn't a passenger. It was an unannounced inspection that I asked for to be accommodated and was.
>
> Q: Was a ticket purchased for you as a passenger on board Liberty of the Seas?
>
> A: Yes.
>
> Q: Would that not be, at least as far as Royal Caribbean knew then, you were a passenger on board that ship?

> A: I can't put myself in the mind of Royal Caribbean. I presume that if I bought a ticket, they presumed I was on there. They had no idea, surely, that I was there for just trying to see what the pool looked like and to gain some documentation so I could be conversant in this deposition.
>
> Q: In which case I'll go back to my original questions, which was, you boarded Liberty of the Seas under the guise of being a passenger?
>
> MR. ROBERTSON: Object to the form of the question.
>
> A: That's one way of saying it, yes.

*Ebro dep.* 15:18-17-1.

Plaintiff's counsel's and Ebro's tactics demonstrate a complete disregard for the judicial process and this Court's authority. The underlying and important purposes of Rule 34 can only be upheld if this motion is granted.

Additionally, Ebro's photographs and videotape obtained during the unauthorized vessel inspection do not depict the pool as it existed on the date of the Plaintiff's alleged incident and are therefore irrelevant and immaterial to the case. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. Evidence which is not relevant is not admissible. *See* Fed. R. Evid. 402. Further, even Ebro's himself claims that his photographs and videotape do not accurately depict what Plaintiff would have seen underwater:

> A: This picture is if a person was wearing goggles. The picture I didn't take and the picture that represents what Mr. Smith saw is one that is yet to be taken. When I do a site inspection when it's court allowed and when you're there and everything, then I'll go down there and take the picture differently with video and so on and then you'll see that this is not sufficient.

*Ebro dep.* 125:9-16.

Not only does Ebro acknowledge that his vessel inspection was not court allowed, but his statement underscores the importance of complying with the Federal Rules of Civil Procedure. Because he was sneaking around on RCL's property instead of conducting a Court approved vessel inspection with RCL's counsel in attendance, Ebro failed to gather relevant photographs and videotape. Because Plaintiff's counsel failed to comply with the Federal Rules of Civil Procedure in requesting a vessel inspection prior to the Court's discovery deadlines, Ebro should be struck as an

expert and Plaintiff should be precluded from offering his testimony and the irrelevant photographs and videotape from the unauthorized vessel inspection at trial.

Additionally, a purported expert witness should not be allowed to imply to the jury that his unauthorized vessel inspection was due to any improper conduct on the part of RCL. Ebro's statements that he needed to circumvent the Rules so that the scene would not be "sanitized" or presented differently are simply false allegations with no factual basis and he should not be permitted to wrongly influence the tier of fact. Plaintiff and his expert should not be permitted to break the Rules and then create a false and negative impression about the Defendant to the jury.

IV.  **EBRO'S NEW OPINIONS BASED ON HIS UNAUTHORIZED VESSEL INSPECTION ARE UNTIMELY AND SHOULD BE STRUCK AS THEY WERE DISCLOSED FOR THE FIRST TIME DURING HIS DEPOSITION ALMOST TWO MONTHS AFTER THE EXPERT REPORT DEADLINE**

The deadline for Plaintiff to furnish his expert witness list to RCL, along with the summaries and reports required by Fed. R. Civ. P. 26(a)(2), was January 8, 2014. *See Court's Orders, DE 15, 16*. Compliance with the Court's Orders and Rule 26 "is not merely aspirational." *Collado v. Carnival Corp.*, 2011 U.S. Dist. LEXIS 83400 (S.D. Fla. July 29, 2011)(citing *OFS Fitel, LLC*, 549 F.3d at 1363.). Rather, Rule 26(a)(2)(B) "is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Id.* Fed. R. Civ. P. 37 provides sanctions for violations of Rule 26(a)(2)(B), including striking the expert witness altogether.

Plaintiff's counsel violated Fed. R. Civ. P. 34 by purchasing a ticket for Plaintiff's Expert to conduct an unauthorized vessel inspection almost two months after the Plaintiff furnished Ebro's Expert Report to RCL. Besides the obviously troubling nature of Plaintiff's counsel's complete disregard for the Federal Rules, these actions have also severely prejudiced RCL's ability to effectively cross examine Ebro regarding his new opinions because they based upon his findings at that ex parte inspection and he disclosed them, for the first time, at his deposition on February 25, 2014. In fact, Ebro even testified that his previous report (the only Report ever provided to RCL) is now no longer accurate, does not contain all the bases and reasons for his opinions, and does not contain all the facts and data considered in formulating those opinions:

> Q:  Okay. So going back to your report, the January 6th, report, it would be inaccurate or incorrect to state that this report contains all of the opinions you intend to testify to in this case, correct?
>
> A:  Yes, that's correct.

> Q: It would also be inaccurate to state then that this report contains all the bases and all the reasons for your opinions, correct?
>
> A: Same answer inasmuch as I've made clear that there are additional reports -- additional opinions that I've gained because of the opportunity to visit the pool in question was not made available at the time I was writing this report.
>
> Q: Likewise, this report does not contain all of the facts and data considered by you in forming your opinions, correct?
>
> A: It is correct only in that it omits the exposure I had to the pool in question and the experience and documentation I engaged in.

*Ebro dep.* 59:11-60:4.

In *Collado,* the plaintiffs similarly submitted their expert disclosure after the court-ordered deadline. *Collado*, 2011 U.S. Dist. LEXIS 83400 at *3. The plaintiffs never sought an extension of time before the relevant deadlines had passed, nor did they seek leave from the court to submit the disclosure out of time. *Id.* The court found that permitting plaintiffs' expert to testify would prejudice the defendant, who was not able to depose her or obtain a rebuttal expert. Moreover, the court held that extending discovery at a late stage in litigation was inappropriate (a joint pretrial stipulation was due in less than a month and trial was in two months). *Id.* at *5. The court was equally unpersuaded by the plaintiffs' argument that they would be "severely prejudiced" if their expert was excluded. *Id.*

In the present case, Plaintiff similarly failed to disclose his expert's opinion regarding alleged design defects prior to the Court-ordered deadline for expert disclosures. Not only did Plaintiff fail to request an extension of time before the relevant deadlines had passed, but also intentionally circumvented the Court and the Rules by secretly conducting the underlying vessel inspection that served as the basis for Ebro's new opinions. Permitting Ebro to testify would prejudice RCL, as counsel for RCL was unable to adequately prepare to effectively depose Ebro on his new opinions or obtain a rebuttal expert. Moreover, expert discovery is not closed and joint pretrial stipulations are due in two months and trial will be held in three months. Plaintiff's counsel and Plaintiff's expert, Ebro's, tactics should cannot possibly be considered substantially justified or harmless and Plaintiff should be sanctioned by striking Ebro from testifying as an expert in this case.

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

WHEREFORE, Defendant, Royal Caribbean Cruises Ltd., respectfully requests that this Honorable Court strike Thomas Ebro as an expert and preclude Plaintiff from introducing any of his opinions at trial.

Dated:  March 4, 2014
Miami, Florida

Respectfully submitted,

**FOREMAN FRIEDMAN, P.A.**

BY: */s/ Darren W. Friedman*
DARREN W. FRIEDMAN, ESQ. (FBN 0146765)
dfriedman@fflegal.com
BEVERLY EISENSTADT, ESQ. (FBN 600430 )
beisenstadt@fflegal.com
BRIAN H. MCGUIRE, ESQ. (FBN 91848)
bmcguire@fflegal.com
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, FL  33131
Tel: 305-358-6555/Fax: 305-374-9077
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was electronically filed via CM/ECF on this 4th day of March, 2014. I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

BY: */s/ Darren W. Friedman*
DARREN W. FRIEDMAN, ESQ.

**SERVICE LIST**

| | |
|---|---|
| James Robertson, Esq. | Leah H. Martinez, Esq. |
| jrobertson@gaebemullen.com | leahmartinez@rccl.com |
| Gaebe, Mullen, Antonelli & DiMatteo | Royal Caribbean Cruises Ltd. |
| 420 South Dixie Highway, 3rd Floor | 1050 Caribbean Way |
| Coral Gables, FL 33146 | Miami, FL  33132 |
| Tel: 305-667-0223/Fax: 305-284-9844 | Tel: 305-539-6910/Fax: 305-539-8101 |
| Counsel for Plaintiff | Counsel for Defendant |
| | |
| | Darren W. Friedman, Esq. |
| | dfriedman@fflegal.com |

19

CASE NO: 13-CV-20697-COOKE/Turnoff

Brian H. McGuire, Esq.
bmcguire@fflegal.com
Beverly Eisenstadt, Esq.
beisenstadt@fflegal.com
Foreman Friedman, PA
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, FL  33131
Tel: 305-358-6555/Fax: 305-374-9077
Counsel for Defendant